510 S.E.2d 436

**The STATE, Respondent,**

**v.**

**Jeremy Michael HOLLIDAY, Appellant.**

**No. 2915.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1998.

Decided Dec. 14, 1998.

Rehearing Denied Feb. 27, 1999.

Assistant Appellate Defenders Robert M. Dudek and Aileen P. Clare, both of Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Office of the Attorney General, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

STILWELL, Judge:

Jeremy Michael Holliday was convicted of resisting arrest and carjacking. On appeal, Holliday argues that he was improperly impeached by his post-arrest silence and that the trial court erred in refusing his jury instruction of coercion. We disagree and therefore affirm.

## I. FACTS

Holliday and his brother Aaron were convicted for actions which took place in the early morning hours of December 31, 1995.[1] The Holliday brothers and the victim, Jerome Vereen, gave starkly conflicting factual accounts of the incident.

### A. Victim's Version

According to Vereen, he parked his car in the fire lane of a grocery store and left the keys in the car. When Vereen came

---

1. Aaron's conviction was reversed and remanded for a new trial in *State v. Holliday,* 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998).

out of the store, he saw Holliday sitting in his car on the driver's side and a truck parked next to his car. When Vereen opened his car door the truck sped off. When he asked Holliday what he was doing in his car, Holliday stated he was turning Vereen's lights off. Vereen was sure he did not leave his lights on. Vereen, convinced Holliday was actually attempting to steal his car, told Holliday to slide over and testified he intended to take Holliday to the police station.

As Vereen was traveling down the road with Holliday in the passenger seat, Aaron came up behind them in his truck and began firing at Vereen's car. A bullet pierced the rear window of the car. Vereen stopped the car and ran and hid on the side of the road. He testified Aaron and Holliday drove up and down the road looking for him. Vereen then ran to a friend's house and called the police.

## B. Holliday's Version

As could be expected, this version differed substantially from Vereen's. Holliday testified he reached into the window of Vereen's car to turn off the lights that had been left on. When Vereen came out of the store he pulled a gun on Holliday and forced him into the car. During the drive, Vereen told Holliday he was taking him to the police station, but he was going to take him somewhere else first. Holliday also claims Vereen was using racial slurs such as "cracker" and "white trash."

Aaron saw Holliday leave with Vereen and knew something was wrong because Holliday did not talk to him before leaving. Aaron was following the car flashing his lights and honking the horn when Vereen began firing a gun at Aaron's truck. Aaron fired two shots at Vereen's tires but one bullet entered the rear window of Vereen's car. Vereen stopped the car and fled the scene on foot while continuing to fire his gun. Holliday testified he crawled to the driver's side of the car and drove home. Aaron testified he had been lying down on his seat to avoid getting shot. Once he sat up, his brother was gone. Both Aaron and Holliday went home.

Holliday wanted to call the police but Aaron thought the police would not believe them and decided it would be best to abandon the car. They were both in the car on their way to

abandon it when the police spotted them and, after a chase and struggle, they were both arrested.

The next morning, the brothers were taken before a magistrate for a bond hearing. The magistrate read them their rights, asked them if they had anything to say, and Holliday responded that he was sorry. The arresting officer, who was present, asked Holliday if he wanted to tell him what happened. Holliday stated they were trying to steal the car, but things got out of hand. Aaron, on the other hand, said nothing.

## II. DISCUSSION

### A.

Holliday argues the trial court erred in rejecting his requested jury instruction regarding coercion. We disagree. In *State v. Robinson*, 294 S.C. 120, 363 S.E.2d 104 (1987), our supreme court stated:

> To excuse a criminal act, the degree of coercion must be present, imminent, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. Coercion is no defense if there is any reasonable way, other than committing the crime, to escape the threat of harm. The fear of injury must be reasonable.

*Id.* at 121–22, 363 S.E.2d at 104 (citations omitted). Coercion and duress envision a third person compelling another by the threat of immediate physical violence to commit a crime against someone else or someone else's property. *Frasier v. State*, 306 S.C. 158, 162, 410 S.E.2d 572, 574 (1991); *Robinson*, 294 S.C. at 121–22, 363 S.E.2d at 104.

Holliday argues there was evidence he was coerced into driving off in Vereen's car because he believed Vereen would shoot him if he attempted to exit the car. Holliday, however, offered no evidence that Vereen or anyone else actually compelled him to take the car. The evidence is clear that Vereen had fled the car, leaving Holliday safely inside. The law to be charged is determined from the evidence presented at trial. *State v. Long*, 325 S.C. 59, 480 S.E.2d 62 (1997). The facts as developed here do not support an instruction on coercion.

## B.

■ Holliday argues the State impermissibly attacked his right to remain silent during cross-examination. We disagree. At trial, the following colloquy took place between Holliday and the State:

A.  ... the officer asked the Magistrate if he could ask me something.

Q.  Okay. And what did the officer ask you?

A.  He asked me why did I do that. . . .

Q.  Okay. And what was your answer?

A.  I says I didn't and I said I'm sorry for any inconvenience.

Q.  You are telling this Court now that you did not state to him I was just trying to steal the car, actually we were just trying to steal the car and it got out of hand, you didn't state that to Officer Broecker?

A.  I did not say that, no.

Q.  Did you say anything remotely close to that?

A.  No, ma'am.

Q.  Did you then tell them your kidnapping story?

A.  No, ma'am.

Q.  Don't you think that would be kind of important for them to hear now that you are going to be arrested?

[DEFENSE COUNSEL] Objection, Your Honor.

THE COURT:  Objection for what?

[DEFENSE COUNSEL] Regarding continuing statement of the defendant, sir.

THE COURT:  Note his objection.

. . . .

Q.  Did you not feel like you should tell then Deputy Broecker since you were having conversation with him that you had just been a victim of a kidnapping?

A.  That is the only thing he asked me.

Q.  So until somebody specifically asks you if you have been kidnapped and assaulted with a weapon you are not going to say anything?

A.  Well, I had my rights so I did not say nothing without a lawyer or my dad present.

The facts here are analogous to the facts in *State v. Kimsey,* 320 S.C. 344, 465 S.E.2d 128 (Ct.App.1995). In *Kimsey,* the defendant confessed to burglary and grand larceny. At trial, the defendant testified someone gave him the stolen property. During cross-examination, the solicitor asked the defendant why he did not tell the police at the time of his arrest or while in jail that he was holding the property for someone else. The court held the defendant's testimony at trial was inconsistent with the testimony of his confession; therefore, the trial court properly permitted the State to cross-examine him on the inconsistent statements. *Id.* at 346, 465 S.E.2d at 130.

Holliday's testimony at trial was inconsistent with his prior statements. Unlike Aaron, Holliday chose *not* to remain silent and so the State had the right to cross-examine him about his prior inconsistent statements. Accordingly, Holliday's conviction is

**AFFIRMED.**

CURETON and CONNOR, JJ., concur.